OETIKER v. REO MOTOR CAR CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—EVIDENCE INSUFFICIENT TO SUPPORT FINDING THAT DISABILITY RESULTED FROM ACCIDENT.

Where an employee received a severe cut on the back of his left wrist during the course of his employment, and after the wound had healed he complained of neuritis in the left arm and shoulder, followed by a general breakdown, both mentally and physically, which the doctors testified could not have been caused by the cut, but was caused by a chronic condition described as "progressive,"

On right and extent of review of findings of commission under workmen's compensation act, see note in L. R. A. 1917D, 186.

testimony by one of the doctors that he might have continued longer at work had not his attention been challenged to his physical condition by the injury to his wrist, *held*, insufficient to support the finding of the department of labor and industry that his disability was due to the accident, entitling him to an award under the workmen's compensation act.[1]

Certiorari to Department of Labor and Industry. Submitted October 30, 1924. (Docket No. 35.) Decided December 31, 1924.

Ernest Oetiker presented his claim for compensation against the Reo Motor Car Company for an accidental injury in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed, and order set aside.

*C. W. & W. S. Foster* (*William S. Cameron*, of counsel), for appellant.

*William C. Brown*, for appellee.

SHARPE, J. The plaintiff suffered a somewhat severe cut on the back of his left wrist on January 22, 1923, while in the employ of the defendant. It was thus described by the nurse who rendered him first aid:

"It was an inch or inch and a quarter long, I think, and it was not deep, not straight down, it was rather slanting, under the skin more—perhaps a little less than a quarter of an inch."

He continued work until February 13th. At that time the wound was healed and the redness and swelling had gradually disappeared. A few days before the 13th, he complained to the nurse of pain in his left arm. There was no outward evidence of the cause. On that day he went to see Dr. McNamara.

[1] Workmen's Compensation Acts, § 114.

The doctor testified that he was suffering from "a neuritis involving the left hand and arm;"

"our treatment consisted of what we call light treatments two or three times a week.   *   *   *   These treatments were gratifying, the patient liked them, but apparently it didn't affect the case."

In answer to a question as to whether his then condition might be due to the cut on his wrist, the doctor answered, "I should say absolutely impossible." In the opinion of the doctor, his condition was due to a general breakdown, both mentally and physically. He continued at work intermittently until April 4th. He went to Ann Arbor on June 20th, where he was examined by Dr. Klingman, a specialist in neurology. He testified that he found his trouble to be:

"Primarily, a spinal arthritis; secondly, a neuritis; with atrophy of the muscles of the left shoulder, left upper arm, and some of the fore arm and hand on the same side.    He also had some difficulty in walking probably due to the same condition.    He had a spinal curvature.    He had an arterio-sclerosis with very distinct changes in his eye-grounds, and very distinct mental symptoms, loss of memory, disosientation from the arterio-sclerosis which had affected his brain."

The X-ray revealed—

"bony deposits between all of the joints of the vertebra from the third cervical down to and entirely through the cervicals."

He was asked:

"*Q.* Not all of this difficulty arose from the scratch on the hand?
"*A.* Oh, no; impossible; out of the question.    In the first place, this sort of trouble is not due to infection, acute infection; it is always chronic infection; it is not caused by the same bacteria.
"*Q.* There was no evidence of acute infection in this case, was there?
"*A.* Apparently not,

"*Q.* Is it to be expected that the kind would be affected from such a neuritis?

"*A.* No.

"*Q.* I mean, accounting for the mental condition.

"*A.* It is due to the hardening of the arteries."

He described his condition as "progressive" and testified that "he might have continued for quite a time if something had not come up to challenge his attention."

The plaintiff was in the hospital at the time of the hearing. The deputy commissioner awarded compensation at the rate of $14 per week during total disability, and his award was affirmed on appeal to the full board. Defendant reviews this order by certiorari.

The board based its order upon the testimony of Dr. Klingman, and particularly that part of it wherein he testified that plaintiff might have continued longer at work had not his attention been challenged to his physical condition by the injury to his wrist. The testimony of both doctors is convincing that the injury to his wrist had completely healed and in itself had no effect upon the physical condition of plaintiff at the time of the hearing. He had been suffering from neuritis for years. His teeth had been removed in 1922 at the suggestion of a doctor who was then treating him.

It is our duty to ascertain whether there is any evidence to sustain the findings of the board. The reasoning employed in *Ortner* v. *Zenith Carburetor Co.*, 207 Mich. 610, applies with much force to the facts here presented. In our opinion there was no evidence to support the finding that his then disability was due to the accident.

The award is reversed and set aside.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.